UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMY SMITH | CIVIL ACTION |
| VERSUS | No. 14-2689 |
| TOURO INFIRMARY ET AL. | SECTION I |

### ORDER AND REASONS

Before the Court are motions[1] for summary judgment filed by each of defendants, Touro Infirmary ("Touro") and Larry Anderson ("Anderson"). Plaintiff opposes each motion.[2] For the following reasons, defendants' motions are **GRANTED**.

### BACKGROUND

Plaintiff began her employment at Touro on June 9, 2008, as a registered respiratory therapist on the night shift.[3] Anderson, Touro's manager of respiratory care, worked during the day shift but still exercised some supervisory authority over plaintiff.[4] Plaintiff's complaint contains a number of lurid allegations regarding a sexually charged working environment, allegedly promoted by Anderson, which the Court need not detail here.[5]

Beginning in 2010, plaintiff began taking leave pursuant to the Family and Medical Leave Act ("FMLA") for interstitial cystitis and migraine headaches, with periods of both

---

[1] R. Doc. Nos. 80, 81. The Court notes that Anderson's motion requests judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure or, in the alternative, summary judgment. R. Doc. No. 81, at 1. Under these circumstances, the Court finds it appropriate to resolve Anderson's motion for summary judgment and dismiss as moot Anderson's request for judgment on the pleadings.
[2] R. Doc. Nos. 85, 86.
[3] R. Doc. No. 80-2, ¶ 1; R. Doc. No. 85-1, ¶ 1.
[4] *See* R. Doc. No. 80-2, ¶ 2; R. Doc. No. 85-1, ¶ 2.
[5] *See* R. Doc. No. 1, ¶¶ 9-26.

intermittent and continuous leave occurring through the end of her employment in late 2014.[6] Plaintiff's FMLA leave was exhausted by August 28, 2014.[7] Plaintiff never contacted Touro's human resources department or a supervisor to advise them of her status and she never returned to work.[8] Plaintiff filed a charge of discrimination with the EEOC alleging violations of Title VII and the FMLA on August 21, 2014.[9] Plaintiff was issued a right-to-sue letter on September 3, 2014.[10] Touro terminated plaintiff on or about September 22, 2014.[11]

Plaintiff filed the complaint in the above-captioned matter on November 24, 2014.[12] Touro filed its motion for summary judgment on July 21, 2015,[13] and one day later Anderson filed his motion for judgment on the pleadings pursuant to Rule 12(c) or, alternatively for summary judgment.[14] Because the motions present substantially the same issues and are decided on the same grounds, the Court jointly resolves both motions in this order and reasons.

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary

---

[6] *See* R. Doc. No. 80-2, ¶¶ 5-6, 8-14; R. Doc. No. 85-1, ¶¶ 5-6, 8-14.
[7] R. Doc. No. 80-2, ¶ 14; R. Doc. No. 85-1, ¶ 14.
[8] *See, e.g.*, R. Doc. No. 80-2, ¶ 18; R. Doc. No. 85-1, ¶ 18; R. Doc. No. 80-4, at 83-85.
[9] R. Doc. No. 80-2, ¶ 20; R. Doc. No. 85-1, ¶ 20.
[10] R. Doc. No. 80-2, ¶ 21; R. Doc. No. 85-1, ¶ 21.
[11] R. Doc. No. 80-2, ¶ 19; R. Doc. No. 85-1, ¶ 19.
[12] R. Doc. No. 1.
[13] R. Doc. No. 80.
[14] R. Doc. No. 81.

judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## DISCUSSION

Plaintiff is pursuing three causes of action: 1) hostile work environment based on gender pursuant to Title VII, 2) retaliation under the Family and Medical Leave Act ("FMLA"), and 3) retaliation under Title VII. The Court addresses each in turn.[15]

---

[15] To the extent that plaintiff's complaint arguably pleads a claim for sexual harassment in addition to her claim for a hostile work environment based on gender, plaintiff has abandoned such claim. *See* R. Doc. No. 71, at 2; R. Doc. No. 85-5.

I.    **Hostile Work Environment**

Title VII prohibits discrimination "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). "'The creation of a hostile work environment through harassment . . . is a form of proscribed discrimination.'" *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (quoting *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2455 (2013)).

Because plaintiff relies on circumstantial evidence of discrimination,[16] the *McDonnell Douglas* three-stage burden-shifting framework applies to plaintiff's claims. *E.g.*, *Cardiel v. Apache Corp.*, 559 F. App'x 284, 288 (5th Cir. 2014). As the Fifth Circuit explains:

> Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff . . . .

*Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

In order to satisfy her burden of establishing a *prima facie* case at stage one of the *McDonnel Douglas* framework, "[t]he plaintiff in a hostile work environment claim must establish that 1) she belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005). However, for cases in which "a supervisor with immediate (or successively higher) authority" is the alleged harasser, "the employee need only satisfy the first four elements of the

---

[16] "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994). Plaintiff has produced no such evidence.

aforementioned test." *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 n.2 (5th Cir. 2001) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)); *see also Boh Bros.*, 731 F.3d at 453.

Once the burden has shifted back to the plaintiff, Title VII requires a plaintiff to show "either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado*, 492 F.3d at 611.

Plaintiff's complaint alleges that Touro permitted "an openly notorious and hostile work environment to exist for a long time against Smith."[17] Plaintiff alleges that Anderson "made his subordinate's gender and the availability of their sexual favors[] the common currency of the workplace."[18] Plaintiff also alleges that this "sexually permeated work environment" included Anderson's "constant[] and repeated[] . . . sexual advances towards [plaintiff]'s female co-workers" and his "open[] flaunt[ing] [of] his sexual relationships with his female subordinates." Anderson also allegedly "treat[ed] them favorably, giv[ing] them preferable work schedules, desirable overtime work and promotions."[19] Plaintiff argues that because she was not a part of Anderson's "'harem' of willing female subordinates"[20] and because she refused and complained about his sexual advances,[21] she was "subjected to hyper vigilance, hyper criticism of [her] work

---

[17] R. Doc. No. 1, ¶ 40.
[18] R. Doc. No. 1, ¶ 13.
[19] R. Doc. No. 1, ¶ 14.
[20] R. Doc. No. 1, ¶ 37.
[21] R. Doc. No. 1, ¶¶ 19-22.

performance, routine verbal abuse, less favorable work schedules, denial of favorable overtime and denial of promotion."[22]

The gravamen of plaintiff's complaint is that those female employees who were willing to submit to Anderson's sexual advances and participated in or condoned the sexually charged work environment were treated favorably, while those who did not were treated unfavorably. However, the Fifth Circuit has established that "such 'paramour favoritism' is not an unlawful employment practice under Title VII." *Wilson v. Delta State Univ.*, 143 F. App'x 611, 614 (5th Cir. 2005). "'[W]hen an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender.'" *Id.* (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 (5th Cir. 2003)) (alteration in original).

Perhaps in recognition of the Fifth Circuit's clear precedent regarding paramour cases, plaintiff argues in her opposition that "this is not a paramour case. This is a gender discrimination case. . . . Plaintiff complains that she was treated less favorably than her peers based on gender stereotyping and suffered a hostile work environment based on sex."[23] Plaintiff contends that she endured "a hostile work environment because she refused to conform to [Andersons's] stereotypical view of women."[24] "[Plaintiff] complains that she was treated less favorably than her co-workers because she was not subservient to Larry Anderson or fill [sic] traditional gender roles of women."[25]

"More than two decades ago, the Supreme Court held that a plaintiff may rely on gender-stereotyping evidence to show that discrimination occurred 'because of . . . sex' in accordance

---

[22] R. Doc. No. 1, ¶ 18.
[23] R. Doc. No. 85, at 15.
[24] R. Doc. No. 85, at 16.
[25] R. Doc. No. 85, at 18.

with Title VII." *Boh Bros.*, 731 F.3d at 453 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). Thus, plaintiff can prove the third element of her *prima facie* case by demonstrating that she was harassed based on a "perceived failure to conform to traditional gender stereotypes." *Id.* at 454; *see also Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224-25 (1st Cir. 2012) ("A gender-stereotyping claim arises when an individual suffers an adverse employment action because she either conforms or fails to conform to some stereotype or stereotypes attributable to her gender."). Plaintiff's gender-stereotyping argument fails.

First, there is no reference to or suggestion of gender stereotyping apparent anywhere in plaintiff's complaint, the record, or plaintiff's deposition—the first time that plaintiff advanced such argument is in her opposition to Touro's motion for summary judgment. Another section of this Court has dismissed a gender-stereotyping theory for this very reason. *See Love v. Motiva Enterprises, LLC*, No. 07-5970, 2008 WL 4286662, at *9-10 (E.D. La. Sept. 17, 2008) (Barbier, J.) ("Love has both procedurally and substantively failed to make any such claim. First of all, no claim or even allegation of sexual stereotyping harassment appears in Love's Complaint or in her deposition testimony. The only mention of any sexual stereotyping claim is in Love's Opposition.").

Even if plaintiff's complaint sufficiently pleads a gender stereotyping theory, plaintiff's claim still must fail because she has not demonstrated that she was harassed based on a "perceived failure to conform to *traditional gender stereotypes*." *Boh Bros.*, 731 F.3d at 454 (emphasis added). Plaintiff has not offered any evidence or identified any authority to suggest that subservience, sexual availability or promiscuity, and/or complicity in a sexually charged workplace are stereotypes "that, by common knowledge or widely shared perception, [are] understood to be attributable to women." *Morales-Cruz*, 676 F.3d at 225. "By definition, terms

that convey only gender-neutral meanings are insufficient to anchor a gender-stereotyping claim." *Id.* As stated by the U.S. Supreme Court:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* . . . because of . . . sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)) (alterations in original).

Plaintiff has produced nothing to demonstrate that Anderson's alleged views were based on conceptions of masculinity or femininity that applied only to one gender. Rather, Anderson's alleged views were based on the permissibility of a sexually charged workplace and an individual's complicity in that kind of behavior. As Touro notes, and as plaintiff's deposition testimony reveals, "[p]laintiff admits Anderson treated males and females both more and less favorably than she was treated; this is fatal to her Title VII claims."[26] The summary judgment evidence establishes that both men and women were allegedly subject to unfavorable treatment by Anderson. Accordingly, plaintiff has not raised a genuine issue of material fact with respect to the third element of her *prima facie* case, and her gender discrimination claim must fail.

---

[26] R. Doc. No. 80-3, at 13; R. Doc. No. 80-3, at 11-13 (outlining plaintiff's deposition testimony as it related to Anderson's treatment of the men and women in plaintiff's department); *see also, e.g.*, R. Doc. No. 85-1, ¶¶ 49-52 ("Anderson adjusted the time clock to reflect more work hours for *men and women* who were subservient to him or filled traditional gender roles of women. Exhibit 8, Smith Deposition, p. 24. . . . Anderson promoted *men and women* who were subservient to him or filled traditional gender roles of women. Exhibit 8, Smith Deposition, p. 24. . . . Anderson required that Smith record reasons for each and every time her work time varied from her scheduled work time, but he did not require that from *men and women* who were subservient to him or filled traditional gender roles of women. Exhibit 8, Smith Deposition, pp. 24-25. . . . Anderson required that Smith justify each and every time she needed time off, but he did not require that from *men and women* who were subservient to him or filled traditional gender roles of women. Exhibit 8, Smith Deposition, p. 26.") (emphasis added).

## II.     FMLA Retaliation

"The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1)(D)). "When an eligible employee returns from leave taken under the FMLA, the employer must restore the employee to the same position or to 'an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Id.* (quoting 29 U.S.C. § 2614(a)(1)). "The FMLA also contains proscriptions against penalizing an employee for the exercise of FMLA rights." *Id.* (citing 29 U.S.C. § 2615(a)(1)-(2)).

"The Fifth Circuit applies the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA, noting that 'there is no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws.'" *Id.* at 768. "To make a *prima facie* showing of retaliation under the FMLA, [a plaintiff] must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Id.*

Plaintiff's complaint alleges that she was discriminated against in a number of ways and that she suffered several adverse employment actions,[27] but her deposition testimony contradicted many of these allegations.[28] Plaintiff states in her opposition that she "suffered

---

[27] R. Doc. No. 1, ¶¶ 17-26.
[28] *See, e.g.*, R. Doc. No. 80-3, at 15-17 (highlighting the numerous contradictions in plaintiff's testimony and allegations).

9

several adverse employment actions after she took FMLA leave in June 2014,"[29] but she only offers argument with respect to two decisions: her termination,[30] and her assignment "to work the Emergency Room (ER) and Intensive Care Units (ICU) simultaneously for an entire weekend" immediately upon her return from leave.[31]

With respect to plaintiff's assignment to the ER and ICU following her return from leave, plaintiff has not raised a genuine issue of material fact regarding the second element of her *prima facie* case. The Court finds that such action was not a materially adverse employment decision forbidden by the FMLA. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks omitted); *see also McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008) ("[W]e conclude *Burlington Northern* applies to retaliation claims under the FMLA."). However, "reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.''" *Burlington Northern*, 548 U.S. at 71 (quoting *Oncale*, 523 U.S. at 81).

---

[29] R. Doc. No. 85, at 11.
[30] R. Doc. No. 85, at 12.
[31] R. Doc. No. 85, at 11. Alternatively, the Court finds that plaintiff has waived any claims based on purported adverse employment actions that were not briefed in connection with her opposition to the motions for summary judgment.

Plaintiff alleges in the complaint that "no-one else had ever had to cover [both the ER and ICU] at the same time,"[32] and that "[t]hese assignments were individually considered to be high risk and exhausting. Taken together they constituted a form of public punishment which attempted to make an example of [plaintiff] as an example of his ability to control his 'harem' of willing female subordinates."[33] However, in her deposition, plaintiff testified that she received such an assignment "about ten times . . . disbursed throughout her employment."[34] Plaintiff also testified that one of her coworkers, Patricia, "did it more than I did," that is, worked in two intensive care areas at the same time.[35] Plaintiff has also submitted a sworn affidavit which she signed on July 27, 2015, eighteen days after her July 9, 2015 deposition, that "[t]his simultaneous assignment of a respiratory therapist to two intensive care facilities was unprecedented and had never been done at Touro, to my knowledge."[36]

Further undermining the allegations in plaintiff's complaint, Touro has produced uncontroverted evidence in the form of "[h]ospital employee tracking records [which]

---

[32] R. Doc. No. 1, ¶ 36.
[33] R. Doc. No. 1, ¶ 37.
[34] R. Doc. No. 80-4, at 44.
[35] R. Doc. No. 80-4, at 46-47.
[36] R. Doc. No. 85-2, ¶ 9. Touro's asserts that such affidavit may contain statements that are not based on plaintiff's personal knowledge. R. Doc. No. 96, at 3-4; *cf.* R. Doc. No. 85-2, at 1 ("I, Amy Smith, verify under penalty of perjury . . . that I have personal knowledge of the following . . . ."). The Court notes that Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Although there is considerable doubt as to whether all of the statements in plaintiff's affidavit are truly within her personal knowledge, *see* R. Doc. No. 96, at 2-3, the Court need not resolve the issue to decide defendants' motions for summary judgment.

The Court also notes that the Fifth Circuit is clear that a nonmoving party may not manufacture a dispute of fact to defeat a motion for summary judgment by submitting an affidavit that contradicts, without explanation, that party's own prior deposition testimony. *Doe ex rel. v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n.23 (5th Cir. 1992).

demonstrate that multiple other [employees] were given assignments to work in the ER and ICU, simultaneously, throughout 2014, when Plaintiff said it happened to her."[37] Such records indicate that 28 individuals worked in the ER and ICU on the same day during 2014.[38] Plaintiff has not established that such an assignment affected her compensation or the terms and conditions of her employment, nor has plaintiff provided any statements by her coworkers that they considered such assignments to be "high risk and exhausting" or "a form of public punishment."[39] To the contrary, dozens of her coworkers evidently worked similar assignments without issue.[40]

Considering all the particular circumstances of this case, the Court finds that plaintiff has not produced any evidence to suggest that a "reasonable person in the plaintiff's position" would have been dissuaded from exercising their FMLA rights by the dual assignment. *See Burlington Northern*, 548 U.S. at 71. Accordingly, the Court finds that plaintiff has not raised a genuine issue of material fact regarding whether such assignment was not a materially adverse employment action prohibited by the FMLA.

With respect to plaintiff's termination, plaintiff has not raised a genuine issue of material fact regarding the third element of her *prima facie* case. Although such action is certainly "an adverse employment decision," plaintiff cannot establish that she was terminated "because she took FMLA leave." *Hunt*, 277 F.3d at 763. Plaintiff "was ultimately terminated while she was on leave . . . for job abandonment."[41] The undisputed evidence, including plaintiff's own testimony, establishes that plaintiff had run out of FMLA leave and that she had not contacted her employer

---

[37] R. Doc. No. 96, at 6 (citing R. Doc. No. 96-3 to -5).
[38] *See* R. Doc. No. 96-3, at 1.
[39] *Cf.* R. Doc. No. 1, ¶ 37.
[40] *See* R. Doc. No. 96-3, at 1.
[41] R. Doc. No. 85, at 12. Plaintiff disputes "that Touro's stated reason is the real reason she was terminated." R. Doc. No. 85, at 12.

regarding her return to work for approximately a month.[42] "If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires." *Id.* Accordingly, Touro was within its rights to terminate plaintiff when her FMLA leave expired and she did not return to work or advise them of her status.

Plaintiff's assertion that "she was eligible for non-FMLA leave under [Touro's] own policy" does not alter this conclusion.[43] Touro policy requires that "[f]or Non-FMLA leave, the employee must provide a physician's statement for the employee's own health condition or a family member justifying the need for the absence and the length of time anticipated."[44] The medical certification that plaintiff provided Touro only justified the need for medical leave through August 28, 2014, the end of plaintiff's FMLA leave eligibility and, as stated, plaintiff

---

[42] R. Doc. No. 96, at 10 n.11 ("There was no medical documentation on file[] justifying medical leave beyond Plaintiff's August 28, 2014 FMLA exhaustion date.") (citing R. Doc. No. 80-6); R. Doc. No. 80-4, at 143 ("On 8/28/14 you exhausted the 12 weeks maximum leave allowed under the [FMLA]. Therefore, your FMLA leave ended on 8/28/14. . . . If you are still unable to work, you must provide a statement from your physician documenting your current medical condition and your anticipated return to work date."); R. Doc. No. 80-4, at 83-85 ("Q. I'm asking you whether you contacted anybody on or after 8/28/2014? A. I didn't realize that I needed to, so no. Q. So you didn't contact anyone after 8/28/2014? A. I wasn't aware that I needed to. . . . Q. And as of September 11, 2014 had you contacted anyone at Touro to tell them your status? A. No. Q. Did you ever contact anyone at Touro to tell them when you might return from FMLA leave? A. I just said I didn't realize I needed to. Q. So the answer is no, you didn't? A. No, because I didn't realize I needed to. . . . Q. Were you granted -- A. Yes, I was. Q. -- every FMLA you requested? A. Yes, I was. . . . Q. Were you granted all the FMLA leave you requested by Touro? A. All that I requested on paper. Q. Well, all that you submitted an FMLA certification for? A. Right."); R. Doc. No. 80-4, at 87 ("Q. Did you call anybody at Touro after your conversation with Emily and say: Hey guys, my doctor won't release me yet; I need more time. Or anything along those lines? A. No. Q. Did you ever talk to anybody at Touro about your job after September 29, 2014? A. No.").

Plaintiff disputes that she ever received certain letters that were allegedly mailed by Touro which warned her of the end of her FMLA leave and the possibility of her termination if she failed to contact her employer or provide further documentation. *E.g.*, R. Doc. No. 80-4, at 143. However, such dispute is immaterial because plaintiff does not dispute the *contents* of those letters—namely, that she never provided documentation to or made contact with Touro after the end of her FMLA leave.

[43] R. Doc. No. 85, at 24.
[44] R. Doc. No. 80-4, at 97.

13

never contacted Touro regarding her medical condition after her FMLA leave expired. Pursuant to Touro's policy, therefore, she was ineligible for non-FMLA leave. Accordingly, plaintiff has not established that there was any causal link between her termination and her protected activity.[45]

### III. Title VII Retaliation

Plaintiff also claims Title VII retaliation. Plaintiff's *prima facie* case for retaliation requires her to show: (1) engagement in protected activity, (2) an adverse employment action, and (3) a causal link between the two. *E.g.*, *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). As with her FMLA retaliation claim, plaintiff has not raised a genuine issue of material fact regarding a causal link between her termination and her filing of an EEOC charge on August 21, 2014, or any other protected activities,[46] and plaintiff has not demonstrated a

---

[45] Alternatively, Touro has carried its burden to "articulate a legitimate, nondiscriminatory reason for its actions," and plaintiff has failed to demonstrate that such reason was pretextual or that Touro acted due to any impermissible motive. *Alvarado*, 492 F.3d at 611. Plaintiff's briefing on this point is inadequate and she does not address the true problem with her actions: plaintiff disappeared and never told her employer when, if ever, she would return to work. *See* R. Doc. No. 85, at 13-15.

The Court notes that the Fifth Circuit has not decided whether the mixed-motive analysis still applies to FMLA retaliation cases or whether a heightened but-for causation standard applies pursuant to *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013). *See Castay v. Oschner Clinic Found.*, 604 F. App'x 355, 356 & n.2 (5th Cir. 2015). Because plaintiff's claims fail under either standard, this Court need not decide the question.

The Court also notes that it need not address Anderson's alternative argument that he was not an "employer" under the FMLA, *see* R. Doc. No. 81-3, at 3-5, because plaintiff has failed to state a *prima facie* case of FMLA retaliation.

[46] As with the FMLA retaliation claim, the Court finds in the alternative that Touro has sustained its burden of articulating a legitimate, nondiscriminatory reason for plaintiff's termination, and that plaintiff has failed to demonstrate that such reason was pretextual or that the but-for cause of her termination was retaliatory. *See Nassar*, 133 S. Ct. at 2533 ("Based on these textual and structural indications, the Court now concludes as follows: Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

genuine issue of material fact that she suffered any other adverse employment action. Accordingly, this claim for relief is also without merit.[47]

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendants' motions for summary judgment are **GRANTED** and that all of plaintiff's claims in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Touro's motions[48] in limine and defendant's motion for judgment on the pleadings are **DISMISSED AS MOOT**.

New Orleans, Louisiana, August 28, 2015.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[47] Because plaintiff cannot make a *prima facie* case for Title VII retaliation, the Court will not address Touro's exhaustion argument. *See* R. Doc. No. 96, at 10; *see also Rivers v. Geithner*, 548 F. App'x 1013, 1017 n.1 (5th Cir. 2013).

[48] R. Doc. Nos. 102, 103.